IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

FREDDIE DAVIS,

        Plaintiff,

vs.                            No. 09-2045-STA/cgc

GEORGE LITTLE, et al.,

        Defendants.

_____

ORDER ASSESSING $350 CIVIL FILING FEE
(DOCKET ENTRY 2)
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
(DOCKET ENTRY 3)
ORDER OF DISMISSAL
ORDER DENYING MOTION TO GRANT PLAINTIFF ACCESS
(DOCKET ENTRY 6)
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
NOTICE OF APPELLATE FILING FEE
AND
ORDER REAFFIRMING RESTRICTIONS ON FILING PRIVILEGES

_____

On January 6, 2009, Plaintiff Freddie L. Davis, prisoner number 226885, who is currently an inmate at the Northwest Correctional Complex ("NWCX")[1] in Tiptonville, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983. The Clerk shall record the defendants as George Little, Tony Parker, Reuben Hodge,

_____

[1]  The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

the State of Tennessee,[2] Inmate Relations Counselor Henning, P.
Galloway, Vickie Kirby, Sergeant Boyld, C. Conrad, Officer
Franklin, William Bryant, Counselor Kelly, Officer Anderson,
Officer Webster, Officer Blair, Officer Parker, Corporal Gunn,
Samantha Phillips, Nurse Atkins, Don Willie, Randy Castleman, Henry
Steward, Counselor Johnson, Corporal Tate, Corporal Brown, Corporal
William, Corporal Sanders, Unit Manager Smith, 1st Medical
Management, and Officer Snow.[3]

I.   Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28
U.S.C. § 1915(a)-(b), a prisoner bringing a civil action must pay
the full filing fee of $350 required by 28 U.S.C. § 1914(a). The in
forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the
prisoner the opportunity to make a "downpayment" of a partial
filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted
an in forma pauperis affidavit bearing a certification by the trust

---

[2]     Plaintiff Davis named the WTSP and the Tennessee Department of
Correction ("TDOC") as Defendants.  Governmental departments, divisions, and
buildings are not suable entities.  Therefore, the Court construes the claims as
claims against the State of Tennessee.  See generally Hafer v. Melo, 502 U. S.
21 (1991).

[3]     The title page of Plaintiff Davis' complaint did not list all
defendants. Plaintiff lists them as parties on page 6.  Davis also names Jane Doe
as a defendant. It is well settled that a complaint cannot be commenced against
fictitious parties.  Bufalino v. Michigan Bell Tel. Co., 404 F.2d 1023, 1028 (6th
Cir. 1968); see also Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996)
(explaining that a claim naming fictitious "John Doe" defendants does not
commence an action and that a subsequent amendment identifying the defendants
cannot relate back under Rule 15).  The Clerk shall not list Jane Doe as a
defendant.

fund officer and a copy of Plaintiff's inmate trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in Plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account, the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that, after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined, he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the Warden of the Jail to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

II.  <u>Appointment of Counsel</u>

Plaintiff has also filed a motion seeking appointment of counsel. (D.E. 6.) Pursuant to 28 U.S.C. § 1915(d), the "court may request an attorney to represent any such person unable to employ counsel." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." <u>Farmer v. Haas</u>, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, <u>Mallard v. United States Dist. Court</u>, 490 U.S. 296, 310 (1989). Generally, a court will appoint counsel only in exceptional circumstances. <u>Willett v. Wells</u>, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," <u>Branch v. Cole</u>, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the <u>pro se</u> litigant's prior efforts to retain counsel, and his ability to present the claims. <u>Henry v. City of Detroit Manpower Dep't</u>, 763 F.2d 757, 760 (6th Cir. 1985); <u>Wiggins v. Sargent</u>, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." <u>Cooper v. A. Sargenti Co.</u>, 877 F.2d 170, 174 (2d Cir.

1989).[4]   The Court is unable to conclude that Plaintiff has satisfied that standard.  A review of this complaint also indicates that the case is not so complex that the Court should exercise its discretion to appoint counsel.   The motion for appointment of counsel is DENIED.

III.  <u>Analysis of Plaintiff's Claims</u>

Plaintiff Freddie Davis was incarcerated at the WTSP before his transfer to the NWCX. Davis has filed a thirty-eight (38) page complaint about the conditions of his confinement at the WTSP. Davis' allegations, many of which are repetitive, are summarized as follows: Davis alleges that upon his arrival at the WTSP and on several different occasions, Defendant Officer C. Conrad verbally abused him with racial epithets.  Defendant Conrad is also alleged to have destroyed Plaintiff's legal documents and property under the guise of a cell search.  Davis also alleges that Conrad threw his prisoner identification and medical pass to the floor during an episode of verbal abuse and directed Plaintiff to pick them up. Plaintiff refused.

Davis alleges that he complained of Conrad's conduct to Defendant Counselor Johnson, who advised Plaintiff to file a grievance.

---

[4]      The Second Circuit has elaborated: "Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention. Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent." <u>Id.</u>

Davis contends that Defendant William Bryant subjected him to verbal threats of transfer to the worst prison in the system and of making Plaintiff serve 100% of his sentence.

When Davis complained about the verbal abuse by Defendant Conrad, Defendant Vicki Kirby advised Plaintiff that she did not want to hear about it because the officers had the right to speak their minds. She also advised Plaintiff to "look over them" when they speak that way and do what they tell him to do.  When Davis told Kirby that he refused Conrad's order to pick up the identification and pass from the floor, Kirby told Davis to pick the items up or he would go to the hole. Davis refused. Kirby called Defendant Officers Anderson, Boyld, and Webster and Sergeant Boyld to escort Plaintiff to the hole.

Plaintiff alleges that Defendant Sergeant Boyld handcuffed Plaintiff with his hand behind his back so tight that his wrists began bleeding.  He contends that Defendants Anderson and Webster held him while Sergeant Boyld struck him in the jaw. He alleges that the three officers drug him by the handcuffs across the compound to Defendant Lieutenant Galloway and an unidentified officer who held a camcorder. The officers were told to take Plaintiff to medical.  Plaintiff admits he received treatment.[5]

---

[5]    Although Plaintiff Davis complains of the denial of medical care for multiple pre-existing health conditions later in the complaint, he does not complain or mention these injuries again.

7

Davis was then placed in punitive segregation for two days for refusing to pick up his identification and medical pass.

Due to alleged threats by Defendant Bryant, Davis made requests to Defendants Kelly, Blair, Parker, Franklin, and Henning to be placed on protective custody. Davis perceived that Bryant put a hit out on him. Davis' repeated requests for protective custody were denied and Defendant Castleman placed him in handcuffs and took him to punitive segregation.

According to Davis, punitive segregation subjected him to dangerous and harmful conditions. The only specific facts alleged to support those contentions are that Davis was not allowed to shower and deprived of his hygiene products. He also was not allowed to have his legal materials. Davis alleges that Defendants Tate, Brown, Williams, and Sanders refused his repeated requests for his hygiene products and commissary while in segregation.

Davis admits that he was charged with the disciplinary offense of creating a disturbance but contends the charge was false. Davis alleges that he made multiple requests for a hearing with witnesses, however, he was told the charge was dropped. Contradictorily, in the relief section of the complaint, Davis alleges that he was not allowed to participate in the hearing or call witnesses and was found guilty. Davis believes that he was placed in segregation as retaliation for his propensity to file grievances.

Plaintiff Davis contends that Defendants Galloway and Castleman are supervisors who failed to stop the verbal abuse and mistreatment of Plaintiff. Davis wrote to Defendant Unit Manager Smith for help and alleges she failed to assist him.

Davis complains that he was denied adequate treatment for pre-existing physical and mental conditions caused by a truck wreck and his service in the military. Davis alleges that Defendant Samantha Phillips is the Medical Administrator responsible for medical care at the WTSP. Davis contends that Phillips reviewed his grievances about inadequate medical care. Davis alleges that Defendant Nurse Practitioner Atkins refused to give Plaintiff medication which had been prescribed by the Veteran's Administration hospital for post-traumatic stress. He contends that approximately twelve (12) requests to see a doctor were denied. Plaintiff had a broken foot and submitted a request on a Sunday to have his medical boot removed which was denied. He alleges that he needs physical therapy. Davis contends his foot has not healed properly and alleges that he told Defendant Willie about pain in his foot.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

<u>Claims against the WTSP and TDOC</u>

The Court construes Plaintiff's claims against the WTSP and TDOC as claims against the State of Tennessee. <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Kentucky v. Graham</u>, 473 U.S. 159, 164-65 (1985); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101-02 (1984). Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court. <u>Graham</u>, 473 U.S. at 165-66; <u>Pennhurst</u>, 465 U.S. at 98-100; <u>Quern v. Jordan</u>, 440 U.S. 332 (1979). Tennessee has not waived its sovereign immunity. Tenn. Stat. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. <u>Lapides v. Board of Regents of the Univ. Sys. of Ga.</u>, 535 U.S. 613, 617 (2002); <u>Will v. Michigan</u>, 491 U.S. 58, 71 (1989). Even to the extent that a suit seeks only injunctive relief against the State, the Eleventh Amendment still bars the action. <u>Idaho v. Coeur D'Alene Tribe of Idaho</u>, 117 S. Ct. 2028, 2041-42 (1997).

<u>Verbal Abuse and Threats</u>

It is well settled that neither verbal harassment nor the mere use of abusive language by prison officials can support liability under § 1983. <u>Ivey v. Wilson</u>, 832 F.2d 950, 955 (6th Cir. 1987)(holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment); <u>Martin v. Sargent</u>, 780 F.2d

1334, 1338 (8th Cir. 1985)(holding that verbal threats to reclassify a prisoner are non-cognizable under § 1983); <u>Banks v. Klapish</u>, 717 F. Supp. 520 (W.D. Mich. 1989); <u>Gilson v. Cox</u>, 711 F. Supp. 354 (E.D. Mich. 1989); <u>Rahman v. Stephenson</u>, 626 F. Supp. 886, 888 (W.D. Tenn. 1986); <u>Coyle v. Hughs</u>, 436 F. Supp. 591, 593 (W.D. Okla. 1977)(threatening words and gestures by custodial officer do not amount to a constitutional violation). Plaintiff's complaints of verbal abuse by Defendants Conrad and Bryant fail to state a claim upon which relief may be granted.

<u>Confiscated Property</u>

To the extent Plaintiff's complains that his property was taken or destroyed by Defendant Conrad, <u>Davidson v. Cannon</u>, 474 U.S. 344 (1986) and <u>Daniels v. Williams</u>, 474 U.S. 329 (1986) held that "the Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a negligent act of an official causing unintended loss of or injury to . . . property." Tennessee affords an adequate remedy for losses such as that alleged by Plaintiff under Tenn. Code Ann. § 29-20-205 (1995), part of Tennessee's Governmental Tort Liability Act (GTLA), which removes immunity from damages suffered through the negligence of acting within the scope of their duties, subject to certain exceptions inapplicable here. As Kelly has an adequate state remedies against any defendant for property damage, he cannot invoke § 1983 to recover damages.

<u>Excessive Force</u>

Plaintiff alleges that Defendant Boyld handcuffed him so tightly that his wrists bled, hit him in the jaw, and drug him by the handcuffs onto the compound.  Defendants Boyld, Anderson, and Webster had been summoned to escort Plaintiff to the hold because Plaintiff refused to obey an order to pick up items from the floor.

The Eighth Amendment prohibits cruel and unusual punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).  An Eighth Amendment claim consists of both objective and subjective components.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992); <u>Wilson</u>, 501 U.S. at 298; <u>Brooks v. Celeste</u>, 39 F.3d 125, 127-28 (6th Cir. 1994); <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992).

The Supreme Court has also clarified the subjective component- the intent of the prison official.  <u>See, e.g.</u>, <u>Farmer</u>, 511 U.S. at 834; <u>Brooks</u>, 39 F.3d at 128.  <u>Cf.</u> <u>Wilson</u>, 501 U.S. at 302-03; <u>Caldwell v. Moore</u>, 968 F.2d 595, 602 (6th Cir. 1992).  The subjective component requires that the official act with the requisite intent, that is, that the official have a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03.  The official's intent must rise at least to the level of deliberate indifference.  <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 303.

The Eighth Amendment proscription on cruel and unusual punishment also encompasses an inmate's right to be free from excessive force.  Hudson, 503 U.S. at 6-7; Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1972).  In the context of excessive force, the objective and subjective components of Eighth Amendment analysis merge into a single inquiry because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Hudson, 503 U.S. at 9.  Thus, the relevant inquiry in any excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Whitley, 475 U.S. at 320-21.

In determining whether the force was applied in a malicious or sadistic manner, the Court should consider such factors as the need for the application of the force, the amount of force used, and the extent of the injury inflicted.  Whitley, 475 U.S. at 319.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  Johnson, 481 F.2d at 1033.  Indeed, prison officials are entitled to use physical force, including personal restraint weapons, to compel obedience by inmates.  See, e.g., Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992).  Moreover, the reasonableness of the use of force must be viewed within the context in which it occurred.  Thus, greater force may be

reasonable when used in response to a serious disturbance or other acts of inmate violence.

Furthermore, prison officials are to be accorded deference in determining what steps need to be taken to preserve internal order and maintain institutional security.  Bell v. Wolfish, 441 U.S. 520, 547 (1979).  Courts should not second guess prison officials regarding which constitutional methods they employ to suppress inmate disturbances.

Prison officials are entitled to use physical force, including devices such as tear gas, to compel obedience by inmates.  See, e.g., Caldwell, 968 F.2d at 602.  The reasonableness of force depends on the circumstances under which it is used.

> The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, providing that the force is not of a sort "'repugnant to the conscience of mankind.'"

Hudson, 503 U.S. at 10-11 (citations omitted).

In this case, Plaintiff clearly alleges that he refused to obey a direct order given by not one, but two officers.  It is clear from the complaint that Plaintiff was partly responsible for the altercation because he refused the order.  Any disobedience of direct orders in a prison carries an automatic and inherent risk of further violence and disturbance that poses a serious threat to internal security and the personal safety of other inmates and prison staff.

14

Plaintiff alleges he received medical treatment for his wrists and jaw and was put in segregation the same day.  He does not allege that he sustained any lasting or lingering injuries from this incident, does not complain of further pain or problems from the injuries, or allege that those injuries ever required further medical treatment.  That Plaintiff was subjected to a minor use of force in an attempt to compel his obedience does not amount to an Eighth Amendment violation.  The allegations are insufficient to establish any claim of use of excessive force.

<u>Claims Arising from Disciplinary Conviction</u>

Prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct," <u>Freeman v. Rideout</u>, 808 F.2d 949 (2nd Cir. 1986). A claim for monetary and equitable relief complaining only of procedural defects in a prison disciplinary hearing which, if established, would imply the invalidity of the punishment imposed, is not cognizable under § 1983.  <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648-89 (1997).  Prison disciplinary proceedings give rise to a due process claim only if they result in the imposition of restrictions which constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (2005).

To the extent that Plaintiff complains because he was placed in punitive segregation without a shower or his hygiene articles,

he has no claim.  See Sandin, 515 U.S. at 484-87 (confinement to segregation is not an atypical or significant hardship giving rise to due process protections); Schrader v. White, 761 F.2d 975, 980 (4th Cir. 1985)(observing that not infrequently the same inmates who desire secure surroundings frequently complain when officials impose conditions reasonably related to providing that security).  See also Hutto v. Finney, 437 U.S. 678, 686 (1978)(confinement to punitive isolation does not implicate cruel and unusual punishment unless conditions themselves are cruel and unusual); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987)("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment," citing Hutto); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981)(same).  Cf. Hoptowit v. Ray, 682 F.2d 1237, 1256 (9th Cir. 1982)(classification decisions, in and of themselves, do not violate the Eighth Amendment); Gilland v. Owens, 718 F. Supp. 665, 686 (W.D. Tenn. 1989)(same, following Hoptowit).

The denial of a daily shower and hygiene products does not demonstrate a violation of the Eight Amendment.  An Eighth Amendment claim requires a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834; Stewart, 796 F.2d at 44.  Within the context of claims that prison conditions constitute a deprivation sufficiently serious to meet the objective component of an Eighth Amendment claim, the Court's inquiry must focus on whether inmates are deprived of the

"minimal civilized measure of life's necessities." <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes</u>, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Rhodes</u>, 452 U.S. at 347).

Plaintiff's allegation that he was denied access to showers does not approach the type of sustained exposure to a hazardous condition that violates the Eighth Amendment.[6] Plaintiff alleges no physical harm and no deprivation of a necessity of life. The allegations as a matter of law does not constitute an atypical and significant hardship. His claim does not rise to the level of an Eighth Amendment violation. <u>Wilson</u>, 501 U.S. at 305.

<u>Claims Against George Little, Tony Parker,</u>

<u>and Reuben Hodge</u>

Plaintiff's complaint contains no allegations of any individual action or inaction by Defendants Little, Parker, and Hodge. When

---

[6]    <u>See, e.g.</u>, <u>Spencer v. Bouchard</u>, 449 F.3d 721, 728-29 (6th Cir. 2006) (evidence of continuous exposure to cold temperatures for several months, coupled with "evidence that large quantities of water leaked onto [Plaintiff's] bed whenever it rained or snowed," sufficient to raise a triable issue of fact); <u>Geder v. Godinez</u>, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (allegations of unsanitary conditions, "including the presence of defective pipes, sinks, and toilets, improperly-cleaned showers, a broken intercom system, stained mattresses, accumulated dust and dirt, and infestation by roaches and rats" not sufficiently serious to satisfy the objective component of an Eighth Amendment violation); <u>Wilson v. Schomig</u>, 863 F. Supp. 789, 794-95 (N.D. Ill. 1994) (allegations that plaintiff's "cell contained dirt, dust and roaches, and that his ceiling leaked during rainstorms" are "not sufficiently serious" to violate the Eighth Amendment).

a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).

<u>Claims Against Little, Parker, Hodge, Galloway, Castleman, 1st Medical Management and Samantha Phillips</u>

Defendants Little, Parker, Hodge, Galloway, Castleman, 1st Medical Management, and Samantha Phillips cannot be held liable on the basis of their supervisory positions at the WTSP. There is no <u>respondeat</u> <u>superior</u> liability under § 1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984) (liability under § 1983 in a defendant's personal capacity must be predicated upon some showing of direct, active participation in the alleged misconduct).

The participation of any defendant in reviewing Plaintiff's grievances and complaints does not constitute sufficient personal involvement to state a claim of constitutional dimension. <u>Simpson v. Overton</u>, 79 Fed. Appx. 117, 2003 WL 22435653 (6th Cir. 2003); <u>see also</u> <u>Martin v. Harvey</u>, 14 Fed. Appx. 307, 2001 WL 669983, at *2 (6th Cir. 2001)("The denial of the grievance is not the same as the denial of a request to receive medical care."). Section 1983 liability may not be imposed against these Defendants for "a mere failure to act" based upon information contained in the grievance.

18

See <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999); <u>Lillard v. Shelby County Bd. of Educ.</u>, 76 F.3d 716, 727-28 (6th Cir. 1996).

Court Access

The Court construes Plaintiff's allegations about the denial of access to legal papers and writing supplies as a court access claim.  It is true that a prisoner has the right, protected by the First Amendment, "to petition the Government for a redress of grievances."  The scope of this right in relation to prisoners has been enunciated in <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), and its progeny.  According to that body of caselaw, the scope of this right for prisoners is limited.  The Sixth Circuit has previously held that the right of access to the courts requires affirmative assistance for inmates "only in the preparation of legal papers in cases involving constitutional rights and other civil rights actions <u>related to their incarceration</u>."  <u>Knop v. Johnson</u>, 977 F.2d 996, 1009 (6th Cir. 1992)(emphasis added).  <u>See also</u> <u>John L. v. Adams</u>, 969 F.2d 228, 236 (6th Cir. 1992).

This view was subsequently adopted by the United States Supreme Court:

> <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

19

Lewis v. Casey, 518 U.S. 343, 355 (1996).  The Court declared that no claim exists under Bounds without an actual injury.  Inmates must have sought "to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  Id. at 351-53 (emphasis added).[7]  No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."[8]  Id.  As recognized even before Lewis, "[w]e are concerned with a right of access to the courts, not necessarily to a prison law library."  Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985); Franzen, 697 F.2d at 803.

Here, Plaintiff has had more than adequate access to the courts because he has been able to present multiple lawsuits to the United States District Court for the Western District of Tennessee.  Thus,

---

[7]    That an indigent prisoner has no constitutional or other right of access to the courts to prosecute a frivolous action has found expression in previous lower court rulings.  See, e.g., In re Billy Roy Tyler, 839 F.2d 1290, 1292 (8th Cir. 1988); Phillips v. Carey, 638 F.2d 207, 209 (10th Cir. 1981).

[8]    This decision adopts the view widely adopted by the lower courts that a viable Bounds claim depends on an inmate's pleading and proving he was actually impeded in his ability to conduct a particular case.  Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985).  See also Strickler v. Waters, 989 F.2d 1375, 1383 n.10 (4th Cir. 1993)(citing numerous cases requiring some actual prejudice as an essential component of a Bounds claim); Jones v. Franzen, 697 F.2d 801, 803 (7th Cir. 1983).  Lower courts had previously held that the inmate must have suffered some actual interference with a case, such as missing a court deadline, the dismissal of an action that otherwise would have proceeded, or the imposition of sanctions.  Weaver v. Toombs, 756 F. Supp. 335, 340 (W.D. Mich. 1989).  See also Martin v. Davies, 917 F.2d 336, 340 (7th Cir. 1990)(claim of interference with court-access must be supported by factual allegations of missed court dates, loss of a won case, or an inability to file on time).

he has not suffered any actual interference with his right of access to the courts.

### Medical Treatment

Under <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 105. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." <u>Id.</u>

Within the context of <u>Estelle</u> claims, the objective component requires that the medical need be sufficiently serious.  <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992).  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir. 1980)(quoting <u>Laaman v. Helgemoe</u>, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To make out a claim of an Eighth Amendment <u>Estelle</u> violation, a prisoner must plead facts showing that "prison authorities have

denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976).  The Court clarified the meaning of deliberate indifference in Farmer v. Brennan, as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice.  Id. 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment.  See Estelle, 429 U.S. at 106.

Plaintiff's complains that some pleas for medical treatment went unanswered or there was a delay in receiving treatment.  It is clear that Plaintiff has received some medical and mental health treatment.  Where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims which sound in state tort law. Westlake, 537 F.2d at 860 n. 5.  Insofar as Plaintiff's requests for additional and/or different testing, medications, orders, and courses of treatment are unfulfilled, the Eighth Amendment does not require that every request for medical care made by a prisoner be honored.  Fitzke v. Shappelle, 468 F.2d 1072, 1076 (6th Cir. 1972). Plaintiff's differences of opinion with medical personnel about

diagnosis or treatment fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need. Id.

To the extent any defendant was negligent in Plaintiff's diagnosis, treatment, or evaluation, such error would amount at most to medical malpractice. "[A] complaint that a physician [or nurse] has been negligent in treating or failing to treat a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105-06.

Each of the foregoing claims of this complaint fails to state a claim upon which relief may be granted. Therefore, all claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii), 28 U.S.C. § 1915A(b)(1), and Fed. R. Civ. P. 12(h)(3). The motion to grant access (D.E. 6) is DENIED as moot due to the dismissal of the complaint.

IV. Appeal Issues

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not

be taken <u>in forma pauperis</u> if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u>  It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendant, but has sufficient merit to support an appeal <u>in forma pauperis</u>. <u>See</u> <u>Williams v. Kullman</u>, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal <u>in forma pauperis</u>.

Under 28 U.S.C. § 1915(b), a prisoner plaintiff must pay the entire $455 filing fee required by 28 U.S.C. §§ 1913 and 1917.[9]  <u>In forma pauperis</u> status merely grants him the right to pay the fee in

---

[9]     The fee for docketing an appeal is $450.  <u>See</u> Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913.  Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal, or of a writ of certiorari, $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

installments.  In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit construed § 1915(b) as requiring a prisoner to pay the entire appellate filing fee in installments even if the trial court certifies that the appeal is not taken in good faith.  <u>McGore</u>, however, did not address appeals by prisoners who are barred from proceeding <u>in forma pauperis</u> by 28 U.S.C. § 1915(g).  That section nullifies the installment-payment privileges created by § 1915(b).  Twenty-eight U.S.C. § 1915(g) bars Davis from taking an appeal under § 1915(b).[10]  <u>Green v. Nottingham</u>, 90 F.3d 415, 417 (10th Cir. 1996).

If Plaintiff files a notice of appeal, the Clerk is ORDERED to assess and collect the entire fee of $455 from his prison trust fund account whenever funds are in the account, without regard to the installment payment provisions of § 1915(b).  If Plaintiff files a notice of appeal, he must pay the entire fee within thirty (30) days of filing that notice.  If he does not, this Court will notify the United States Court of Appeals for the Sixth Circuit that he has failed to comply with the fee requirements, and that Court will dismiss his appeal.  It will not be reinstated thereafter even if he does pay the filing fee.  <u>Cf.</u> <u>McGore</u>, 114 F.3d at 609-10.

---

[10]    <u>See</u> <u>Davis v. Axley</u>, No. 08-2683-JDT/dkv (August 3, 2009)(dismissing § 1983 complaint for failure to state a claim); <u>Davis v. Odell</u>, No. 08-2692-JDT-tmp (March 19, 2009)(dismissing § 1983 complaint for failure to state a claim; <u>Davis v. Bond</u>, No. 08-1250-JDB/egb (June 22, 2009)(dismissing § 1983 complaint for failure to state a claim).

V.   <u>Reaffirmation of Restrictions on Filing Privileges</u>

The Court REAFFIRMS the restrictions imposed upon Davis' filing privileges set forth in the order of dismissal entered in <u>Davis v. Axley, et al.</u>, No. 09-2683-JDT/dkv (W.D. Tenn. Aug. 3, 2009). Compliance with that order is a condition to filing any case in this Court.  Any complaint submitted by Plaintiff which does not comply will not be filed, but will be immediately returned to Plaintiff. The Court will then impose further sanctions against Plaintiff, including a further monetary fine, which may be collected directly from his prison trust fund account.  Any case submitted by this plaintiff to another court that is thereafter transferred to this district **WILL RESULT** in the same sanctions and a **MONETARY FINE**.

The Clerk of Court is ORDERED not to file, open on this Court's docket, assign a new docket number, or assign to a judge, any further case whatsoever submitted by this plaintiff unless specifically directed to do so by a district judge or magistrate judge of this district.

Plaintiff is ORDERED not to file any further documents in this actions except a one-page notice of appeal.

IT IS SO ORDERED this 31st day of August, 2009.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE